**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

JEREMY R. GROMER                              )
                                             )
      Plaintiff,                            )
                                             )
v.                                           )          Cause No.: 4:26-cv-00438
                                             )
CHARLES WEAVER, in his individual            )          JURY TRIAL DEMANDED
capacity                                     )
                                             )
and                                          )
                                             )
REYNOLDS COUNTY                              )
                                             )
Defendants.                                  )
                                             )

Serve Defendant Charles Weaver
at:
Reynolds County Sheriff's Office
2319 Green St
Centerville, MO 63633

Serve Defendant Reynolds County
at:
Reynolds County
c/o Alicia Baker, Clerk of the County Commission
2319 Green St.
Centerville, MO 63633

## CIVIL COMPLAINT

Plaintiff states:

### Venue, Jurisdiction, and Identity of Defendants

1.  All tortious acts and events described herein occurred in Reynolds County, Missouri.

2.  Jurisdiction is conferred upon this United States District Court by 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S. C. §§ 1981, 1983, and 1985(3).

1

3. At all times material to this action, Defendant Charles Weaver was acting under color of State law.

4. Plaintiff sues the individually named defendant in his individual capacity on all counts.

## **FACTS**

5. On February 10, 2024, Jeremy R. Gromer (Hereafter "Jeremy") suffered multiple seizures.

6. Plaintiff has suffered seizures for many years.

7. Plaintiff has previously been diagnosed with seizure disorder.

8. Plaintiff was prescribed multiple medications for his seizures.

9. Plaintiff suffered two seizures on the morning of February 10, 2024.

10. Plaintiff took Dilantin, but still suffered a third seizure, leading to the request for emergency services.

11. Confusion commonly occurs as a result of seizure activity in the brain.

12. Irritability commonly occurs as a result of seizure activity in the brain.

13. EMTs arrived a short time later, but Jeremy declined medical care and demanded they leave.

14. The EMTs refused to leave.

15. Jeremy became upset that the EMTs would not leave his home and would not let him decline care.

16. The EMTs requested police assistance.

17. Defendant Charles Weaver, a deputy with the Reynolds County Sheriff's Department, was the responding officer.

18. Defendant Weaver pressured Jeremy to accept medical care by refusing to leave the home when Plaintiff told him to and by conveying to Plaintiff that Plaintiff had no choice other than to be taken to the hospital.

19. Defendant and EMTs repeatedly informed Jeremy that they would not leave his home until he was taken to the hospital.

20. During an earlier phase of his seizure, Jeremy had lost control of his bodily functions.

21. Jeremy insisted that he be allowed to shower to clean himself prior to going to the hospital.

22. An EMT told Defendant that Jeremy could not use the shower.

2

23. Defendant allowed Jeremy to walk to the bathroom and close the door.

24. Defendant then went to the bathroom to remove Jeremy from the bathroom.

25. By the time Defendant entered the bathroom, Plaintiff was already in the shower.

26. Defendant ordered Jeremy to get out of the shower.

27. Jeremy would not get out of the shower.

28. Defendant threatened to tase Jeremy if he did not get out of the shower.

29. Jeremy told Defendant that Defendant couldn't tase him because he was standing in water.

30. At that time, Defendant tased Jeremy while he was standing in the shower.

31. Jeremy fell forward from the shower and hit his head.

32. Jeremy remained in the shower.

33. Jeremy eventually got out of the shower on his own.

34. A short time later, Jeremy was allowed to refuse medical care and the EMTs and the Defendant left.

### Count I
### Unreasonable Seizure in Violation of the Fourth Amendment to the Constitution, actionable under 42 U.S.C. §§ 1983
(Defendant Weaver, in his personal capacity)

35. Plaintiff re-asserts the allegations of paragraphs 1-34 and incorporates them herein as though fully re-stated.

36. Defendant was aware that Plaintiff was suffering from a seizure.

37. Defendant was aware that this was not a criminal call.

38. Defendant was aware that the purpose of his presence in Plaintiff's home was to keep the peace and protect medical personnel.

39. Defendant had no factual basis for believing that Plaintiff had committed a crime.

40. Defendant had no factual basis to believe that Plaintiff was an immediate threat to his own safety.

41. Defendant had no factual basis to believe that Plaintiff was an immediate threat to anyone else.

42. Plaintiff had agreed to be taken to the hospital if he could shower.

43. He was then able to walk into the bathroom and get into the shower without anyone trying to stop him.

44. Plaintiff was specifically trying to comply with Defendant's commands regarding Plaintiff going to the hospital.

45. Defendant ordered Plaintiff out of the shower.

46. Plaintiff did not get out of the shower.

47. Defendant ordered Plaintiff to get out of the shower under threat of force.

48. When Defendant did not comply, Defendant used force against Plaintiff in an attempt to control Plaintiff's body, limit his ability to move, and/or to force his body to move against his will from a place he had a right to be.

49. As a result of that force, Plaintiff fell.

50. Plaintiff was unable to control his body while being tased.

51. Defendant seized Plaintiff within the meaning of the Fourth Amendment.

52. That seizure was unwarranted and unreasonable.

53. The seizure was not based on reasonable suspicion or probable cause any facts sufficient to form a legal basis for such seizure of Plaintiff's person.

54. No reasonable officer under the same circumstances would have believed it was reasonable or lawful to seize Plaintiff by forcing Plaintiff out of the shower against his will.

55. As a direct and proximate result of Defendant's actions, Plaintiff was damaged.

56. Plaintiff's damages include:

   a. Physical Pain

   b. Unlawful Detention

   c. Emotional Distress

57. Defendant's actions were outrageous.

58. Defendant's actions demonstrated a reckless disregard for the rights of Plaintiff.

### Count II
### Unreasonable Seizure in Violation of the Fourth Amendment to the Constitution, Excessive Force, actionable under 42 U.S.C. §§ 1983

59. Plaintiff re-asserts the allegations of paragraphs 1-58 and incorporates them herein as though fully re-stated.

60. Defendant seized Plaintiff, initially, through commands and a show of force.

61. When Plaintiff did not comply with Defendant's commands to get out of the shower, Defendant escalated the situation by threatening to tase Plaintiff.

62. When Plaintiff responded that the Defendant couldn't tase him because he was standing in water, Defendant tased him.

63. At the time Defendant tased Plaintiff, Plaintiff was standing still and was in the shower.

64. At the time Defendant tased Plaintiff, Plaintiff was not threatening Defendant in any way.

65. At the time Defendant tased Plaintiff, Plaintiff was more than five feet away from him.

66. At the time Defendant tased Plaintiff, Plaintiff did not pose a danger to himself, the Defendant, or anyone else.

67. Defendant deployed his taser solely because Plaintiff was uncooperative.

68. Defendant was armed with a TASER X2 model taser.

69. The TASER X2 comes with specific product warnings regarding probe deployment to incapacitate the person tased (as was done here).

70. Officers are warned that probe deployment can cause the loss of bodily control which can increase the risks of serious injury or death.

71. Officers are specifically warned that persons especially at risk from such injuries include people who could fall and hit their head, people located in water, and people who are physically infirm.

72. Plaintiff did fall and hit his head when he was tased.

73. Officers are also specifically warned that tasing can induce seizures.

74. Defendant was aware that Plaintiff had suffered multiple seizures leading up to his tasing Plaintiff.

75. The Reynolds County Sheriff's Department policies instruct that its officers may only use reasonable force "in situations which cannot be controlled otherwise" and only after other reasonable alternatives are exhausted or clearly ineffective.

76. Those policies limit the use of "less lethal" weapons, which include taser deployments, to situations where empty hand control techniques are not sufficient in effecting an arrest.

77. Those policies divide "empty hand control" techniques into "soft" and "hard."

78. Soft empty hand techniques are designed to meet low levels of resistance, such as verbal non-compliance.

79. Hard empty hand techniques, such as striking techniques, are designed to meet higher levels of physical resistance or active aggression. "These techniques are applied when lower forms of control have failed" or where the subject is perceived as a danger.

80. Defendant failed to follow any of those policies.

81. No reasonable officer would or could have thought Plaintiff posed a danger to anyone at the time he was tased.

82. No reasonable officer would believe that tasing Plaintiff was a reasonable use of force under the circumstances Defendant encountered.

83. No reasonable officer would believe that tasing someone is a reasonable means to gain compliance from a subject who has simply failed to follow verbal commands, particularly where the subject was not under arrest or criminal investigation.

84. As a direct and proximate result of the Defendant's violation of Plaintiff's Constitutional Rights, Plaintiff suffered damages as described above in Count I and incorporated herein by reference.

85. Defendant's actions were outrageous.

86. Defendant's actions demonstrated a reckless disregard for the rights of Plaintiff.

### Count III
### Violation of Title II of the Americans with Disabilities Act (42 U.S.C.  12131 et. Sec.)
(Defendant Reynolds County)

87. Plaintiff re-asserts the allegations of paragraphs 1-86 and incorporates them herein as though fully re-stated.

88. At all times relevant, Defendant Weaver was employed by Defendant Reynolds County as a deputy sheriff.

89. At all times relevant, Defendant Weaver was acting within the course and scope of his employment as a deputy sheriff for Reynolds County.

90. Defendant Reynolds County is a public entity as defined under the Americans with Disabilities Act.

91. The ADA applies to arrests, detentions, and other activities of police officer in their dealings with the general public.

92. Under the ADA, Defendant Reynolds County is vicariously liable for the misconduct of its employees and agents, including Defendant Weaver.

93. When Defendant Weaver tased Plaintiff, he had actual knowledge and/or had reason to know that Plaintiff was disabled by a brain seizure.

94. Defendant Weaver was informed by dispatch and by EMTs on scene that Plaintiff had suffered several seizures that morning and was still dealing with the effects.

95. Defendant Weaver was told that Plaintiff had a history of seizures.

6

96.   On February 10, 2024, Plaintiff was a "qualified individual" under the Americans with Disability Act ("ADA") with regard to the receipt of police and other emergency services.

97.   On February 10, 2024, Plaintiff was disabled within the meaning of the ADA.

98.   The emergencies services provided by Defendant Reynolds County, through its agent, Defendant Weaver, occurred while Plaintiff was suffering from a seizure.

99.   Defendant Reynolds County, through its employee Defendant Weaver, wrongfully seized and used excessive force against Plaintiff because he misperceived irritability, confusion, and other seizure symptoms as defiance or aggression.

100.  Defendant Reynolds County, through its employee Defendant Weaver, wrongfully seized and used excessive force against Plaintiff because Plaintiff's seizure limited his ability to regulate his emotions.

101.  Defendant Reynolds County, through its employee Defendant Weaver, wrongfully tased Plaintiff because of limitations caused by and other effects of his disability.

102.  Defendant Reynolds County does not have a written policy regarding law enforcement interactions with citizens potentially in need of medical care.

103.  Defendant Reynolds County does not have a written policy regarding law enforcement interactions with citizens with disabilities.

104.  Defendant Reynolds County does not have a written policy regarding law enforcement interactions with citizens suffering from seizures.

105.  Defendant Reynolds County does not provide deputies with training regarding law enforcement interactions with citizens potentially in need of medical care.

106.  Defendant Reynolds County does not provide deputies with training regarding law enforcement interactions with citizens with disabilities.

107.  Defendant Reynolds County does not provide deputies with training regarding law enforcement interactions with citizens suffering from seizures.

108.  Even if Defendant Weaver had a lawful reason to detain Plaintiff, Defendant Reynolds County, by and through its agent Defendant Weaver, failed to accommodate Plaintiff's disability.

109.  Such need for accommodation was obvious and apparent, based on the totality of the circumstances, Defendant Weaver's actual knowledge, and generally accepted law enforcement standards for safely handling encounters with seizure victims.

110.  The reasonable accommodations that Defendants were required to provide included following generally accepted standards for safely handling seizure victims by refraining from using force except in self-defense, attempting to gain compliance through non-confrontational means, using deescalation techniques, and refraining from escalating the interaction or threaten the seizure victim.

7

111. Defendant Weaver knew and/or reasonably should have known that the aforementioned accommodations were available.

112. Defendant Reynolds County is directly liable to Plaintiff for violating the ADA by discriminating against seizure victims by failing to properly train its law enforcement officers on how to appropriately treat and interact with seizure victims.

113. Defendant Reynolds County is directly liable to Plaintiff for violating the ADA by discriminating against seizure victims by failing to properly train its law enforcement officers on how to appropriately treat and interact with disabled citizens.

114. As a direct and proximate result of Defendant Reynolds County's violations of the ADA, by and through its employees and agents, Plaintiff sustained damages as described in Count I and incorporated herein, costs, and attorneys' fees under 42 U.S.C. § 12205.

WHEREFORE, Plaintiff prays for judgment against Defendants in a fair and reasonable amount, for court costs, attorney's fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205 and for all other such orders as are fair and reasonable and for damages for aggravating circumstances or punitive damages in such sums that will serve to punish the Defendants appropriately and that will deter others from similar behavior.

/s/ John D. James
John D. James, #61070(MO)
James Law Group, LLC.
14 Richmond Center Court
St. Peters, Missouri 63376
(636) 397-2411 Fax: (636) 397-2799
E-mail: CJLaw@CharlieJames.com
John@CharlieJames.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2026, I electronically filed the foregoing with the Clerk of the Court and that an electronic notice of filing and a copy of the foregoing will automatically be sent to all counsel of record.

/s/ John D. James

8